Andrew J. Kopke, SBN 340036
Law Offices of Andrew J. Kopke
1555 Lakeside Drive, Suite 121
Oakland, CA 94612
(510) 545-6210
Ajekopke.law@gmail.com

*Attorney for Plaintiff Wendy Greene,*
*individually, and in her capacity as successor*
*in interest to the Estate of Michael Hastey*

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Wendy Greene, individually, and in her capacity as successor in interest to the Estate of Michael Hastey,<br><br>Plaintiff.<br><br>vs.<br><br>California Department of Corrections and Rehabilitation; Warden Brian Kibler; Captain M. Knedler; Lieutenant J. Flores (Badge No. 65593); Lieutenant R. Chandler (Badge No. 66633); Sergeant S. Kelly (Badge No. 70341); Officer J. Yocius (Badge No. 91380); Officer M. Kelly (Badge No. 95350); Officer M. Zarate (Badge No. 95866); Officer M. Woodruff (Badge No. 96693); Officer E. Hall (Badge No. 90595); Officer L. Ochoa (Badge No. 91368); RN B. Rice; RN A. Davy; RN V. Hauser; LVN K. Oliver; Does 1-35,<br><br>Defendants. | Case No.<br><br>**(1) Failure to Protect**<br>(42 U.S.C. § 1983)<br><br>**(2) Deliberate Indifference to Serious Medical Needs**<br>(42 U.S.C. § 1983)<br><br>**(3) Deprivation of Familial Association**<br>(42 U.S.C. § 1983)<br><br>**(4) Negligence**<br>(Cal. Code of Civ. Proc. § 377.30; Gov. Code §§ 844.6; 845.6)<br><br>**(5) Wrongful Death**<br>(Cal. Code of Civ. Proc. § 377.60)<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Wendy Greene, individually, and in her capacity as successor in interest to the Estate of Michael Hastey, by and through her attorney, alleges upon information, belief, and personal knowledge:

### PRELIMINARY STATEMENT

1. On February 18, 2022, Michael Hastey was brutally murdered on the C Yard at High Desert State Prison, an institution where he never should have been housed and where the officials charged with his protection were forewarned of a number of substantial risks to his safety.

2. While Michael was on the exercise yard, his killers, Michael Ellison ("Ellison") and Christopher Dolan ("Dolan"), approached him from behind and proceeded to stab him approximately 130 times with inmate-manufactured metal knives measuring over 7 inches in length.

3. This attack lasted several minutes and occurred in plain view of numerous guards, some of whom were armed with long rifles, but nevertheless failed to fire a single shot or otherwise intervene in a reasonable manner that was likely to save Michael's life.

4. Various correctional officials and nurses then failed to summon and/or procure life-saving medical care for at least 10 minutes after the attack began.[1]

5. The events that brought Michael to the C Yard amounted to a series of dramatic failures by correctional supervisors, and reception, classification, and intake officials, who knew full-well that Michael was uniquely ill-suited to surviving at High Desert.

---

[1] According to CDCR Incident Reports, the attack began at approximately 1118 hours and Michael was not taken to the Triage Treatment Area until approximately 1129 hours.

6. Not only was Michael extremely young—he was 19 years old at the time of his death—he also suffered from several significant mental health issues that resulted in multiple suicide attempts during his reception and classification.

7. Moreover, Michael was the biological son of Jason Hastey, a CDCR employee and guard at California Correctional Center ("CCC"), the minimum-security prison that adjoins High Desert.

8. Not only was Jason a CDCR employee and guard at CCC, he had previously worked as a guard at High Desert and as a deputy in the Lassen County Sheriff's Office.

9. Not only was Jason a local guard, he had a long and well-documented history of physically and psychologically abusing Michael. This history was referred to in Michael's criminal file as a likely source of some of Michael's mental health issues and was widely known in the Lassen County law enforcement community, because it occurred when Jason worked as a deputy in the Lassen County Sheriff's Office and was sufficiently severe to result in Jason's loss of custodial rights.

10. And yet, despite the obvious risk posed by housing an inmate in a notoriously dangerous Level IV facility where he was related to a local guard, correctional supervisors and reception, classification, and intake officials made the conscious decision to house Michael in the general population at High Desert, where they knew that Michael was likely to be targeted, both as a result of his relationship to a local guard and because he had come under the direct control of his abuser's friends and colleagues.

11. In short, Michael's violent and painful death was the natural and foreseeable culmination of a string of extraordinary failures by correctional supervisors, officials, and nurses, who, by their acts and omissions, revealed their utter indifference to the health and safety of an extremely vulnerable young man whom they were charged to protect.

12. Michael's mother, Wendy Greene, now brings this action on behalf of herself and as the successor in interest to Michael's estate for redress of these harms and with the sincere hope that no future inmate will be the victim of such egregious failures.

## Jurisdiction and Venue

13. This action is brought pursuant to 42 U.S.C. § 1983, the Eighth and Fourteenth Amendments to the United States Constitution, and the laws of the State of California.

14. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1367, as this action seeks redress for the violation of Plaintiff's federal constitutional rights and pendant state law claims.

15. Venue is proper in the United States District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391(b)(2), as the events giving rise to Plaintiff's claims occurred within the federal judicial district of the Eastern District of California.

16. Pursuant to L-R 120, assignment of this action is proper in the Sacramento and Redding Division of the Eastern District of California, as the events giving rise to Plaintiff's claims occurred in Lassen County, California.

## Parties

17. At the time of his death, the decedent, Michael Hastey, was an inmate at High Desert State Prison, and a resident of Lassen County, California.

18. Michael is survived by his mother, Plaintiff Wendy Greene, who is a resident of Trinity County, California. Plaintiff Greene brings suit on behalf of herself and as the successor in interest to Michael's estate.

19. Defendant California Department of Corrections and Rehabilitation is an agency of the State of California and a public entity within the meaning of Gov. Code § 811.2. CDCR is responsible for managing, maintaining, and controlling High Desert State Prison, as well as its officials, employees, and agents. CDCR, by and through its supervisors and officials at its central offices, prisons, facilities, and specialized

units, promulgates, implements, and executes policies relating to the conditions of confinement at its reception, classification, and intake facilities, and at High Desert State Prison, including those related to inmate health and safety. CDCR is also responsible for the training, supervision, discipline, and conduct of all CDCR officials, employees, and agents. CDCR is therefore liable to Plaintiff Greene under a theory of *respondeat superior* for all those claims where such vicarious liability is available.

20. At all relevant times, Defendant Warden Brian Kibler was the acting warden at High Desert State Prison. Defendant Kibler was an employee and agent of the State of California, Department of Corrections and Rehabilitation, and a supervisor at High Desert, with all the duties and authority attendant to his position as a supervisor, manager, and policymaker. Defendant Kibler is sued in his individual capacity for acts committed under color of state law and within the scope of his duties and authority as a supervisor for CDCR.

21. At all relevant times, Defendant Captain M. Knedler was a correctional Captain at High Desert State Prison and the Facility C Captain during the attack that claimed Michael's life. Defendant Knedler was an employee and agent of the State of California, Department of Corrections and Rehabilitation, and a supervisor at High Desert, with all the duties and authority attendant to his position as a supervisor, manager, and policymaker. Defendant Knedler is sued in his individual capacity for acts committed under color of state law and within the scope of his duties and authority as a supervisor for CDCR.

22. At all relevant times, Defendant Lieutenant J. Flores (Badge No. 65593) was a correctional Lieutenant at High Desert State Prison and the Incident Commander during the attack that claimed Michael's life. Defendant Flores was an employee and agent of the State of California, Department of Corrections and Rehabilitation, and a supervisor at High Desert, with all the duties and authority attendant to his position as a supervisor, manager, and policymaker. Defendant Flores is sued in his

individual capacity for acts committed under color of state law and within the scope of his duties and authority as a supervisor for CDCR.

23. At all relevant times, Defendant Lieutenant R. Chandler (Badge No. 66633) was a correctional Lieutenant at High Desert State Prison and the Watch Commander during the attack that claimed Michael's life. Defendant Chandler was an employee and agent of the State of California, Department of Corrections and Rehabilitation, and a supervisor at High Desert, with all the duties and authority attendant to his position as a supervisor, manager, and policymaker. Defendant Chandler is sued in his individual capacity for acts committed under color of state law and within the scope of his duties and authority as a supervisor for CDCR.

24. The defendants identified in paragraphs 20-23 are referred to collectively as the "Correctional Supervisors."

25. At all relevant times, Defendants Does 1-10 were correctional officials, employees, and agents of CDCR charged with the reception, classification, intake, and transfer of CDCR inmates. As of the date of this action's filing, Plaintiff is ignorant of the true names of these Defendants and, accordingly, these Defendants are fictitiously named as Does 1-10. Does 1-10 were officials, employees, and agents of the State of California, Department of Corrections and Rehabilitation. Does 1-10 are sued in their individual capacities for acts committed under color of state law and within the scope of their duties and authorities as officials, employees, and agents for CDCR.

26. The defendants identified in paragraph 25 are referred to collectively as the "Reception, Classification, and Intake Officials."

27. At all relevant times, Defendants Does 11-15 were correctional officials charged with searching and/or processing inmates prior to their entry onto Facility C Exercise Yard No. 2. As of the date of this action's filing, Plaintiff is ignorant of the true names of these Defendants and, accordingly, these Defendants are fictitiously named as Does 11-15. Does 11-15 were officials, employees, and agents of the State of California, Department of Corrections and Rehabilitation. Does 11-15 are sued in

their individual capacities for acts committed under color of state law and within the scope of their duties and authorities as officials, employees, and agents for CDCR.

28. At all relevant times, Defendants Does 16-20 were correctional officials and armed tower guards during the attack that claimed Michael's life. As of the date of this action's filing, Plaintiff is ignorant of the true names of these Defendants and, accordingly, these Defendants are fictitiously named as Does 16-20. Does 16-20 were officials, employees, and agents of the State of California, Department of Corrections and Rehabilitation. Does 16-20 are sued in their individual capacities for acts committed under color of state law and within the scope of their duties and authorities as officials, employees, and agents for CDCR.

29. At all relevant times, Defendants Does 21-30 were correctional officials charged with intervening during the attack that claimed Michael's life. As of the date of this action's filing, Plaintiff is ignorant of the true names of these Defendants and, accordingly, these Defendants are fictitiously named as Does 21-30. Does 21-30 were officials, employees, and agents of the State of California, Department of Corrections and Rehabilitation, and officers at High Desert. Does 21-30 are sued in their individual capacities for acts committed under color of state law and within the scope of their duties and authorities as officials, employees, and agents for CDCR.

30. At all relevant times, Defendant Sergeant S. Kelly (Badge No. 70341) was a correctional Sergeant at High Desert State Prison and the Response Supervisor during the attack that claimed Michael's life. Defendant S. Kelly was an official, employee, and agent of the State of California, Department of Corrections and Rehabilitation. Defendant S. Kelly is sued in his individual capacity for acts committed under color of state law and within the scope of his duties and authority as an official, employee, and agent for CDCR.

31. At all relevant times, Defendant Officer J. Yocius (Badge No. 91380) was a correctional official at High Desert State Prison and Observation Officer No. 2 during the attack that claimed Michael's life. Defendant Yocius was an official,

employee. and agent of the State of California, Department of Corrections and Rehabilitation. Defendant Yocius is sued in his individual capacity for acts committed under color of state law and within the scope his duties and authority as an official, employee, and agent for CDCR.

32. At all relevant times, Defendant Officer M. Kelly (Badge No. 95350) was a correctional official at High Desert State Prison and C Yard Officer No. 4 during the attack that claimed Michael's life. Defendant M. Kelly was an official, employee, and agent of the State of California, Department of Corrections and Rehabilitation. Defendant M. Kelly is sued in his individual capacity for acts committed under color of state law and within the scope his duties and authority as an official, employee, and agent for CDCR.

33. At all relevant times, Defendant Officer M. Zarate (Badge No. 95866) was a correctional official at High Desert State Prison and Facility C, Building 5, Floor Officer No. 1 during the attack that claimed Michael's life. Defendant Zarate was an official, employee, and agent of the State of California, Department of Corrections and Rehabilitation. Defendant Zarate is sued in his individual capacity for acts committed under color of state law and within the scope his duties and authority as an official, employee, and agent for CDCR.

34. At all relevant times, Defendant Officer M. Woodruff (Badge No. 96693) was a correctional official at High Desert State Prison and Facility C, Building 5, Floor Officer No. 2 during the attack that claimed Michael's life. Defendant Woodruff was an official, employee, and agent of the State of California, Department of Corrections and Rehabilitation. Defendant Woodruff is sued in his individual capacity for acts committed under color of state law and within the scope his duties and authority as an official, employee, and agent for CDCR.

35. At all relevant times, Defendant Officer E. Hall (Badge No. 90595) was a correctional official at High Desert State Prison and Facility C, Building 6, Floor Officer No. 2 during the attack that claimed Michael's life. Defendant Hall was an

official, employee, and agent of the State of California, Department of Corrections and Rehabilitation. Defendant Hall is sued in his individual capacity for acts committed under color of state law and within the scope his duties and authority as an official, employee, and agent for CDCR.

36. At all relevant times, Defendant Officer L. Ochoa (Badge No. 91368) was a correctional official at High Desert State Prison and C Yard Officer No. 1 during the attack that claimed Michael's life. Defendant Ochoa was an official, employee, and agent of the State of California, Department of Corrections and Rehabilitation. Defendant Ochoa is sued in his individual capacity for acts committed under color of state law and within the scope of his duties and authority as an official, employee, and agent for CDCR.

37. The defendants listed in paragraphs 27-36 are referred to collectively as the "Correctional Officers."

38. The defendants listed in paragraphs 20-36 are referred to collectively as the "Individual Correctional Defendants."

39. At all relevant times, Defendant RN B. Rice was a Supervising Registered Nurse on the C Yard during the attack that claimed Michael's life. Defendant RN B. Rice was an employee and agent of the State of California, Department of Corrections and Rehabilitation. Defendant RN B. Rice is sued in his/her individual capacity for acts committed under color of state law and within the scope of his/her duties and authority as a Supervising RN for CDCR.

40. At all relevant times, Defendant RN A. Davy was a Registered Nurse on the C Yard during the attack that claimed Michael's life. Defendant RN A. Davy was an employee and agent of the State of California, Department of Corrections and Rehabilitation. Defendant RN A. Davy is sued in his/her individual capacity for acts committed under color of state law and within the scope of his/her duties and authority as a RN for CDCR.

41. At all relevant times, Defendant RN V. Hauser was a Registered Nurse on the C Yard during the attack that claimed Michael's life. Defendant RN V. Hauser was an employee and agent of the State of California, Department of Corrections and Rehabilitation. Defendant RN V. Hauser is sued in his/her individual capacity for acts committed under color of state law and within the scope of his/her duties and authority as a RN for CDCR.

42. At all relevant times, Defendant LVN K. Oliver was a Licensed Vocational Nurse on the C Yard during the attack that claimed Michael's life. Defendant LVN K. Oliver was an employee and agent of the State of California, Department of Corrections and Rehabilitation. Defendant LVN K. Oliver is sued in his/her individual capacity for acts committed under color of state law and within the scope of his/her duties and authority as a RN for CDCR.

43. At all relevant times, Defendants Does 31-35 were correctional officials and/or employees and staff charged with summoning and/or procuring life-saving medical care during the attack that claimed Michael's life. As of the date of this action's filing, Plaintiff is ignorant of the true names of these Defendants and, accordingly, these Defendants are fictitiously named as Does 31-35. Does 31-35 were officials, employees, and agents of the State of California, Department of Corrections and Rehabilitation. Does 31-35 are sued in their individual capacities for acts committed under color of state law and within the scope of their duties and authorities as correctional officials and/or employees and staff for CDCR.

44. The Defendants identified in paragraphs 39-43 are referred to collectively as the "Medical Defendants."

45. All of the Defendants identified in paragraphs 20-43 are referred to collectively as the "Individual Defendants."

//

//

## Claims for Relief

## First Claim — Failure to Protect

### (42 U.S.C. § 1983)

**Estate Against the Individual Correctional Defendants (Correctional Supervisors; Reception, Classification and Intake Officials; Correctional Officers)**

46. Inmates in California state custody have a right to be protected from violence at the hands of guards and other inmates. This right is secured by the Eighth Amendment to the United States Constitution and imposes on prison officials a duty to take reasonable steps to protect inmates from serious threats to their safety.

47. A prison official can be held liable for violating this duty when the official knows of, and disregards, the existence of a substantial or excessive risk that results in foreseeable injury, regardless of whether the risk comes from a single source or multiple sources.

48. Direct evidence is not required to prove that an official knew of the existence of a substantial or excessive risk. Rather, knowledge can be proved by circumstantial evidence and logical inference, *i.e.*, the existence of known facts from which it would be reasonable for an official to infer that a substantial risk exists. Thus, in some circumstances, knowledge can be proved by the very obviousness of the risk itself.

49. In this case, the Correctional Supervisors and Reception, Classification, and Intake Officials knew that there was a substantial and excessive risk to Michael's safety so long as he was housed with the general population at High Desert. These defendants were aware that Michael shared an uncommon last name with his father, Jason Hastey, who was, and remains, a CDCR employee and guard at California Correctional Center ("CCC"), the minimum-security prison that adjoins High Desert.

50. Not only was Jason a CDCR employee and guard at CCC, he had previously worked as a guard at High Desert and as a deputy in the Lassen County Sheriff's Office.

51. The Correctional Supervisors and Reception, Classification, and Intake Officials learned that Michael was Jason's son during Michael's reception, classification, and intake, when these defendants reviewed, or were briefed on, a variety of documents, including, but not limited to, those related to Michael's commitment offense, his criminal and social histories, and his mental health status. Because he was 19 years old at the time of his commitment, Michael was also the subject of a special youth classification process, during which the Reception, Classification, and Intake Officials conducted a separate in-depth review of Michael's background and mental health status in order to decide whether he should be sent to an institution with a lower security level.

52. Thus, prior to being sent to High Desert, and upon his arrival, Michael was the subject of multiple classification and intake processes, during which the Correctional Supervisors and Reception, Classification, and Intake Officials reviewed, or were briefed on, a variety of documents and conducted multiple interviews, all with the ostensible goal of identifying the safest institution for Michael to be housed.

53. As a result of these reviews, the Correctional Supervisors and Reception, Classification, and Intake Officials learned not only that Jason was Michael's father, but also that Jason had a history of physically and psychologically abusing Michael. This history was referred to in Michael's criminal file as a likely source of some of Michael's mental health issues and was widely known in the Lassen County law enforcement community, because it occurred when Jason worked as a deputy in the Lassen County Sheriff's Office and was sufficiently severe to result in Jason's loss of custodial rights.[2]

_____

[2] When Plaintiff refers to the Lassen County law enforcement community, she is referring mainly to those employed at High Desert, CCC, and the Lassen County Sheriff's Office. Because nearly half of the adult population of Lassen County is employed at one of the prisons, there are significant connections between the two institutions, including personal relationships between and among officials and staff,

54. The Correctional Supervisors and Reception, Classification, and Intake Officials nevertheless made the decision to house Michael at High Desert, where they knew that officials, staff, and other inmates would quickly learn the details of Michael's background and where there was a substantial and excessive risk that Michael would be targeted—both as a result of his relationship to a local guard and because he had come under the direct control of his abuser's friends and colleagues.

55. By making this decision, the Correctional Supervisors and Reception, Classification, and Intake Officials revealed their utter indifference to the health and safety of an extremely vulnerable young man, who had been the victim of childhood abuse at the hands of a CDCR employee and who suffered from a number of significant mental health issues, all of which combined to make him uniquely ill-suited to surviving at High Desert.

56. It should come as no surprise, therefore, that Michael found himself in danger almost immediately upon his arrival at High Desert, when he was approached by several inmates with questions about his background and the crimes of which he had been accused as a juvenile.

57. The Correctional Supervisors and Reception, Classification, and Intake Officials did not transfer Michael to another institution or place him in protective custody, but instead placed him in the notoriously dangerous C Facility, where he quickly drew the attention of members and affiliates of the Aryan Brotherhood, including the "shot caller" and his enforcers, Ellison and Dolan.[3]

---

who regularly socialize, communicate with one another, and travel between the two institutions. Over the course of multiple decades, Jason worked as a deputy in the Lassen County Sheriff's Office and as guard at both prisons, making him a particularly well-known member the community.

[3] "Shot caller" is a common term in California prison slang. When Plaintiff refers to the shot caller, she is referring to the individual at the top of the inmate hierarchy, who sets rules, issues orders, and maintains discipline on the C Yard.

58. Rather than take reasonable steps to ensure Michael's safety, the Correctional Supervisors and Reception, Classification, and Intake Officials permitted the shot caller's enforcers, including Ellison and Dolan, to have regular contact with Michael in a variety of different venues.

59. Thus, on or before February 18, 2022, Ellison and Dolan manufactured knives measuring over 7 inches in length from metal taken from their cells. Ellison and Dolan then proceeded to the C Yard, where Does 11-15 permitted them to enter the yard without first conducting a proper search of their persons.

60. The Correctional Officers then permitted Ellison and Dolan to approach Michael from behind and begin to savagely stab him all over his body. The attack lasted several minutes and, according to the Washoe County Medical Examiner's autopsy report, resulted in approximately 130 stab wounds.

61. All of this occurred on the C Yard and in plain view of armed guards, including Does 16-20, who were armed with long rifles, but nevertheless failed to fire a single shot or take any reasonable steps to intervene in such a way as was likely to save Michael's life.[4]

62. As a result of these acts and omissions, Michael Hastey was brutally and foreseeably murdered on the C Yard at High Desert State Prison, an institution where he never should have been housed and where officials were forewarned of a number of excessive and substantial risks to his safety.

63. Thus, the Individual Correctional Defendants were the direct and proximate cause of Michael's injuries and damages.

64. Not only did the Individual Correctional Defendants cause Michael's injuries and damages, they callously exacerbated his pain and suffering.

---

[4] While Defendants M. Kelly, Zarate, and Woodruff deployed a "blast grenade," pepper spray, and used their batons in a belated attempt to quell the attack, these interventions were plainly inadequate and ineffective, as Ellison and Dolan were unfazed and continued to stab Michael repeatedly.

65. As a result of this unconstitutional conduct, the Individual Correctional Defendants are liable to Michael's estate for compensatory and punitive damages, as well as attorney's fees.

### SECOND CLAIM — DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

#### (42 U.S.C. § 1983)

**Estate Against the Correctional Supervisors and Medical Defendants**

66. Plaintiff repeats and realleges every allegation contained in the above paragraphs and further alleges as follows:

67. Inmates in California state custody have a right to adequate medical care. This right is secured by the Eighth Amendment to the United States Constitution and imposes on prison officials a duty not to delay or interfere with medical treatment that is necessary to protect an inmate's health.

68. A prison official can be held liable for violating this duty when the official knows of, and disregards, the existence of an inmate's serious medical needs and the official's delay or interference with necessary medical treatment results in foreseeable injury.

69. Direct evidence is not required to prove that an official knew of the existence of an inmate's serious medical needs. Rather, knowledge can be proved by circumstantial evidence and logical inference, *i.e.*, the existence of known facts from which it would be reasonable for an official to infer that a serious medical need exists. Thus, in some circumstances, knowledge can be proved by the very obviousness of the need itself.

70. In this case, the Correctional Supervisors and Medical Defendants knew that Michael was in serious need of life-saving medical care, because they observed, or were otherwise made aware of, Ellison and Dolan's prolonged attack and Michael's critical injuries.

71. The Correctional Supervisors and Medical Defendants knew that Michael had been stabbed repeatedly with massive metal knives, and that one of these knives was

lodged in his neck, but nevertheless delayed summoning a medical rover for at least 4 minutes after the attack began.

72. The Correctional Supervisors and Medical Defendants knew that the RNs on the C Yard were equipped to provide little more than basic treatment, including stuffing gauze in Michael's gaping wounds and providing oxygen. And yet, these defendants delayed transporting Michael to the Triage Treatment Area, where he could receive life-saving care, for at least 10 minutes after the attack began.

73. Thus, the Correctional Supervisors and Medical Defendants were the direct and proximate cause of Michael's injuries and damages.

74. Not only did the Correctional Supervisors and Medical Defendants cause Michael's injuries and damages, they callously exacerbated his pain and suffering.

75. As a result of this unconstitutional conduct, the Correctional Supervisors and Medical Defendants are liable to Michael's estate for compensatory and punitive damages, as well as attorney's fees.

### Third Claim—Deprivation of Familial Association

### (42 U.S.C. § 1983)

### Plaintiff Greene Against the Individual Defendants

76. Plaintiff repeats and realleges every allegation contained in the above paragraphs and further alleges as follows:

77. A parent has fundamental liberty interests in companionship and association with his or her child. These interests are secured by the Fourteenth Amendment to the United States Constitution, and unwarranted state interference with these interests is actionable under section 1983.

78. A prison official can be held liable for depriving a parent of his or her interests in companionship and association with his or her child when the official's Eighth Amendment violation is sufficiently egregious to shock the conscience. A prison official's conduct shocks the conscience when the official had time to deliberate before acting or failing to act in a deliberately indifferent manner.

79. As described in Plaintiff's first and second claims for relief, the acts and omissions of the Individual Defendants violated the Eighth Amendment because these defendants knew of, and disregarded, the existence of a substantial or excessive risk to Michael's health and safety, and that risk resulted in the foreseeable injury of Michael's death.

80. The Individual Defendants' acts and omissions shock the conscience of a just society because these defendants had numerous opportunities to deliberate before acting or failing to act in such a way as was likely to save Michael's life, including, but not limited to:

    a.   Placing Michael in an institution where he was not likely to be targeted;

    b.   Placing Michael in protective custody;

    c.   Transferring Michael to an institution where he was not likely to be targeted;

    d.   Conducting a proper search of Ellison and Dolan before they entered the C Yard; and

    e.   Once the attack was underway, taking reasonable steps to intervene in a such a way as was likely to save Michael's life.

81. Thus, the Individual Defendants were the direct and proximate cause of Plaintiff Greene's injuries and damages.

82. As a result of this unconstitutional conduct, the Individual Defendants are liable to Plaintiff Greene for compensatory and punitive damages, as well as attorney's fees.

### Fourth Claim — Negligence

### (Cal. Code of Civ. Proc. § 377.30; Gov. Code §§ 844.6; 845.6)

### Estate Against All Defendants

83. Plaintiff repeats and realleges every allegation contained in the above paragraphs and further alleges as follows:

84. Plaintiff Greene is Michael's mother and successor in interest to Michael's estate, as defined in section 377.11 of the California Code of Civil Procedure, and she

succeeds to Michael's interest in this action. (*See* attached Declaration of Plaintiff Greene pursuant to Cal. Code of Civ. Proc. § 377.32.)

85. Plaintiff timely filed her notice of Government Claim pursuant to Gov. Code § 910 *et seq.* on June 14, 2022, under Claim No. 22048041. Notice of rejection of Plaintiff's claim was provided on July 13, 2022, by Sheila Emami of the Office of Risk and Insurance Management. Accordingly, this action is timely filed.

86. As Michael's jailers, each of the Individual Correctional Defendants had an affirmative duty to protect Michael from reasonably foreseeable harm inflicted by third parties, including Ellison and Dolan.

87. Additionally, the Correctional Supervisors and Medical Defendants had an affirmative duty to promptly summon and/or procure life-saving medical care when it became apparent that Michael was in immediate need of such care.

88. The Individual Defendants failed to exercise due care when they made the operational or ministerial decisions listed in paragraph 80(a)-(e).

89. The Individual Defendants thus breached their duties to protect Michael from reasonably foreseeable harm and to promptly summon and/or procure life-saving medical care, resulting in Michael's death.

90. These defendants are therefore liable to Michael's estate for compensatory and punitive damages. Moreover, because this action is filed after January 1, 2022, and before January 1, 2026, these defendants are liable to Michael's estate for Michael's pre-death pain, suffering, and disfigurement. (*See* Cal. Code of Civ. Proc. § 377.34(b).)

### FIFTH CLAIM — WRONGFUL DEATH

### (Cal. Code of Civ. Proc. § 377.60)

### Plaintiff Greene Against the Individual Defendants

91. Plaintiff repeats and realleges every allegation contained in the above paragraphs and further allege as follows:

92. Plaintiff Greene is Michael's mother. Because Michael died intestate and without a surviving spouse or issue, Plaintiff Greene is authorized to bring this action for wrongful death. (*See* Cal. Code of Civ. Proc. § 377.60(a); Cal. Prob. Code § 6402.)

93. Plaintiff Greene timely filed her notice of Government Claim pursuant to Gov. Code § 910 *et seq.* on June 14, 2022, under Claim No. 22048041. Notice of rejection of Plaintiff's claim was provided on July 13, 2022, by Sheila Emami of the Office of Risk and Insurance Management. Accordingly, this action is timely filed.

94. As Michael's jailers, each of the Individual Correctional Defendants had an affirmative duty to protect Michael from reasonably foreseeable harm inflicted by third parties, including Ellison and Dolan.

95. Additionally, the Correctional Supervisors and Medical Defendants had an affirmative duty to promptly summon and/or procure life-saving medical care when it became apparent that Michael was in immediate need of such care.

96. The Individual Defendants failed to exercise due care when they made the operational or ministerial decisions listed in paragraph 80(a)-(e).

97. The Individual Defendants thus breached their duties to protect Michael from reasonably foreseeable harm and to promptly summon and/or procure life-saving medical care, resulting in Michael's death.

98. The Individual Defendants are therefore liable to Plaintiff Greene for compensatory damages.

## Jury Demand

99. Plaintiff demands a trial by jury in this action for each of her claims for which a jury trial is available.

## Prayer for Relief

100. WHEREFORE, Plaintiff Wendy Greene, individually, and in her capacity as successor in interest to the Estate of Michael Hastey, demands a judgement ordering the defendants to pay:

    a. Compensatory damages;

b.  Punitive damages;

c.  Costs, interest, and attorney's fees pursuant to 42 U.S.C. § 1988; and

d.  Such other and further relief as this Court deems just and proper.

DATED: January 13, 2023
Oakland, CA

Law Offices of Andrew J. Kopke

_____
Andrew J. Kopke

*Attorney for Plaintiff Wendy Greene,*
*individually, and in her capacity as*
*successor in interest to the Estate of*
*Michael Hastey*

## DECLARATION OF WENDY GREENE

### (Cal. Code of Civ. Proc. § 377.32)

1.  The decedent, Michael Hastey, died on February 18, 2022, at High Desert State Prison, located at 475-570 Rice Canyon Road, Susanville, CA 96130.

2.  No proceeding is now pending in California for administration of the decedent's estate.

3.  At the time of the decedent's death, the decedent was unmarried and without issue.

4.  As the decedent's mother, I am the decedent's successor in interest, as defined in section 377.11 of the California Code of Civil Procedure, and I succeed to the decedent's interest in this action or proceeding.

5.  No other person has a superior right to commence this action or proceeding or to be substituted for the decedent in the pending action or proceeding.

6.  A certified copy of the decedent's death certificate is attached as Exhibit A.

7.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: JANUARY 13, 2023

Wendy Greene

EXHIBIT A

# STATE OF CALIFORNIA

## COUNTY OF LASSEN
### SUSANVILLE, CALIFORNIA 96130

**CERTIFICATE OF DEATH**
STATE OF CALIFORNIA
USE BLACK INK ONLY / NO ERASURES, WHITEOUTS OR ALTERATIONS
VS-11 (REV 3/88)

3202218000046

**STATE FILE NUMBER** | **LOCAL REGISTRATION NUMBER**

**DECEDENT'S PERSONAL DATA**

| 1. NAME OF DECEDENT—FIRST (Given) | 2. MIDDLE | 3. LAST (Family) |
|---|---|---|
| MICHAEL | | HASTEY |

AKA ALSO KNOWN AS – Include full AKA (FIRST, MIDDLE, LAST)

| 4. DATE OF DEATH mm/dd/ccyy | 5. AGE Yrs. | IF UNDER ONE YEAR Months / Days | IF UNDER 24 HOURS Hours / Minutes | 6. SEX |
|---|---|---|---|---|
| 05/07/2002 | 19 | | | M |

| 9. BIRTH STATE/FOREIGN COUNTRY | 10. SOCIAL SECURITY NUMBER | 11. EVER IN U.S. ARMED FORCES? | 12. MARITAL STATUS/SRDP (at Time of Death) | 7. DATE OF DEATH mm/dd/ccyy | 8. HOUR (24 Hours) |
|---|---|---|---|---|---|
| NV | 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 | YES ☒ NO ☐ UNK | NEVER MARRIED | 02/18/2022 | 1205 |

| 13. EDUCATION – Highest Level/Degree | 14/15. WAS DECEDENT HISPANIC/LATINO/A/SPANISH? (If yes, see worksheet on back) | 16. DECEDENT'S RACE – Up to 3 races may be listed (see worksheet on back) |
|---|---|---|
| HS GRADUATE | YES ☐ ☒ NO | WHITE |

| 17. USUAL OCCUPATION – Type of work for most of life, DO NOT USE RETIRED | 18. KIND OF BUSINESS OR INDUSTRY (e.g., grocery store, road construction, employment agency, etc.) | 19. YEARS IN OCCUPATION |
|---|---|---|
| INMATE | CORRECTIONAL INSTITUTION | 0 |

**USUAL RESIDENCE**

20. DECEDENT'S RESIDENCE (Street and number, or location)
475-750 RICE CANYON RD.

| 21. CITY | 22. COUNTY/PROVINCE | 23. ZIP CODE | 24. YEARS IN COUNTY | 25. STATE/FOREIGN COUNTRY |
|---|---|---|---|---|
| SUSANVILLE | LASSEN | 96130 | 0 | CA |

**INFORMANT**

| 26. INFORMANT'S NAME, RELATIONSHIP | 27. INFORMANT'S MAILING ADDRESS (Street and number, or rural route number, city or town, state and zip) |
|---|---|
| WENDY GREENE, MOTHER | 321 MOUNTAIN VIEW ST., WEAVERVILLE, CA 96093 |

**SPOUSE/SRDP AND PARENT INFORMATION**

| 28. NAME OF SURVIVING SPOUSE/SRDP—FIRST | 29. MIDDLE | 30. LAST (BIRTH NAME) |
|---|---|---|
| - | - | - |

| 31. NAME OF FATHER/PARENT–FIRST | 32. MIDDLE | 33. LAST | 34. BIRTH STATE |
|---|---|---|---|
| JASON | - | HASTEY | CA |

| 35. NAME OF MOTHER/PARENT–FIRST | 36. MIDDLE | 37. LAST (BIRTH NAME) | 38. BIRTH STATE |
|---|---|---|---|
| WENDY | - | HICKEY | CA |

**FUNERAL DIRECTOR/LOCAL REGISTRAR**

| 39. DISPOSITION DATE mm/dd/ccyy | 40. PLACE OF FINAL DISPOSITION | | 43. LICENSE NUMBER |
|---|---|---|---|
| 03/04/2022 | WENDY GREENE'S RESIDENCE 321 MOUNTAIN VIEW ST., WEAVERVILLE, CA 96093 | | |

| 41. TYPE OF DISPOSITION(S) | 42. SIGNATURE OF EMBALMER | |
|---|---|---|
| CREMATE/RESIDENCE | ▶ NOT EMBALMED | |

| 44. NAME OF FUNERAL ESTABLISHMENT | 45. LICENSE NUMBER | 46. SIGNATURE OF LOCAL REGISTRAR | 47. DATE mm/dd/ccyy |
|---|---|---|---|
| WALTON'S COLONIAL MORTUARY | FD707 | ▶ JULIE M. BUSTAMANTE | 02/28/2022 |

**PLACE OF DEATH**

| 101. PLACE OF DEATH | 102. IF HOSPITAL, SPECIFY ONE | 103. IF OTHER THAN HOSPITAL, SPECIFY ONE |
|---|---|---|
| HIGH DESERT PRISON | IP ☐ OP/OP ☐ DOA ☐ | Hospice ☐ Nursing Home/LTC ☐ Decedent's Home ☒ Other ☐ |

| 104. COUNTY | 105. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number, or location) | 106. CITY |
|---|---|---|
| LASSEN | 475-750 RICE CANYON RD. | SUSANVILLE |

**CAUSE OF DEATH**

107. CAUSE OF DEATH
Enter the chain of events – diseases, injuries, or complications – that directly caused death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE.

| IMMEDIATE CAUSE (Final disease or condition resulting in death) | (A) PENDING TOXICOLOGY | | Time onset Relevant Onset and Death | 108. WAS DEATH REPORTED TO CORONER? |
|---|---|---|---|---|
| | (B) | | | YES ☒ NO ☐ |
| Sequentially, list conditions, if any leading to cause on Line A. Enter UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST | (C) | | | 109. BIOPSY PERFORMED? YES ☐ NO ☒ |
| | (D) | | | 110. AUTOPSY PERFORMED? YES ☒ NO ☐ |
| | | | | 111. USED IN DETERMINING CAUSE? YES ☒ NO ☐ |

112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107
NONE

| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? (If yes, list type of operation and date) | 113A. IF FEMALE, PREGNANT IN LAST YEAR? |
|---|---|
| NO | YES ☐ X NO ☐ UNK |

**PHYSICIAN'S CERTIFICATION**

| 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. | 115. SIGNATURE AND TITLE OF CERTIFIER | 116. LICENSE NUMBER | 117. DATE mm/dd/ccyy |
|---|---|---|---|
| Decedent Attended Since ▶ | | | |
| (A) mm/dd/ccyy (B) mm/dd/ccyy | Decedent Last Seen Alive | | |

118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE

**CORONER'S USE ONLY**

| 119. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. MANNER OF DEATH | 120. INJURED AT WORK? | 121. INJURY DATE mm/dd/ccyy | 122. HOUR (24 Hours) |
|---|---|---|---|
| Natural ☐ Accident ☐ Homicide ☐ Suicide ☐ Could not be determined ☒ Pending Investigation ☐ | YES ☐ NO ☐ UNK ☐ | | |

123. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.)

124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury)

125. LOCATION OF INJURY (Street and number, or location, and city and zip)

| 126. SIGNATURE OF CORONER / DEPUTY CORONER | 127. DATE mm/dd/ccyy | 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER |
|---|---|---|
| ▶ DAVID WOGINRICH | 02/28/2022 | DAVID WOGINRICH, DEP CORONER |

**STATE REGISTRAR**

| A | B | C | D | E | FAX AUTH # | CENSUS TRACT |
|---|---|---|---|---|---|---|
| | | | | | | |

---

**CERTIFIED COPY OF VITAL RECORDS**

STATE OF CALIFORNIA } SS.
COUNTY OF LASSEN

DATE ISSUED FEB 2 8 2022 *000069548*

This is a true and exact reproduction of the document officially registered and placed on file with the LASSEN COUNTY CLERK-RECORDER.

JULIE BUSTAMANTE
LASSEN COUNTY CLERK-RECORDER

This copy not valid unless prepared on engraved border displaying seal and signature of County Clerk-Recorder.

PRNCO-08414/9734

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

GREENE-00007